1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AYLALIYA ASSEFA BIRRU,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, et al.,<br><br>Respondents. | Case No. 20-CV-01285-LHK<br><br>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS; DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER[1]**<br><br>Re: Dkt. Nos. 4, 5 |

On March 31, 2020, Petitioner Aylaliya Assefa Birru ("Petitioner") filed a first amended

petition for writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF No. 4 ("Pet."). Petitioner is a

native of Ethiopia who is currently detained in Immigration and Customs Enforcement ("ICE")

custody. *See* Pet. ¶¶ 1, 20; ECF No. 4-3, Ex. A ("Birru Decl.") ¶ 2. Petitioner argues that her

prolonged detention without a bond hearing is unlawful and violates both procedural and

substantive due process. Petitioner requests that the Court either (1) order her immediate release;

or (2) order Respondents Matthew T. Albence, Wendell Anderson, William P. Barr, Erik Bonnar,

and Chad F. Wolf ("Respondents") to provide Petitioner a "bond hearing at which the Government

---

[1] This Order supersedes ECF No. 18, which has been vacated.

1

Case No. 20-CV-01285-LHK
AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

United States District Court
Northern District of California

1    bears the burden of proof by clear and convincing evidence to demonstrate that ongoing detention

2    is justified based on a risk of flight or danger, in light of available alternatives to detention."  Pet.

3    ¶¶ 4, 5, 65.

4          On March 24, 2020, Petitioner also filed an ex parte motion for a temporary restraining

5    order ("TRO") seeking immediate release.  *See* ECF No. 5 ("TRO Mot.").  On March 25, 2020,

6    the Court required Respondents to file a response to the motion for a TRO.  ECF No. 11.  On April

7    1, 2020, Respondents filed an opposition to Petitioner's request for a TRO.[2]  ECF No. 14

8    ("Opp'n").  On April 8, 2020, Petitioner filed a Reply.  ECF No. 16 ("Reply").

9          Having considered the briefing and exhibits submitted by the parties, the Court GRANTS

10   in part and DENIES in part Petitioner's habeas petition and DENIES as moot Petitioner's motion

11   for a TRO.

12   **I.     BACKGROUND**

13         Petitioner is a 36-year-old native of Ethiopia.  Pet. ¶ 20.  Petitioner first entered the United

14   States on a temporary visa in approximately 1999, in an effort to escape the Eritrean-Ethiopian

15   War.  Birru Decl. ¶ 29.  In 2009, Petitioner returned to Ethiopia in order to care for her ill mother.

16   *Id.* ¶ 37.  In 2011, Petitioner met Silas D'aloisio, a United States soldier who was stationed in

17   Ethiopia.  *Id.* ¶ 5.  Petitioner married D'aloisio in 2012, obtained lawful permanent resident status,

18   and returned to the United States in 2014.  *Id.* ¶ 6.  From April 2014 until December 2014,

19   Petitioner alleges that Petitioner suffered a pattern of grave abuse at the hands of D'aloisio,

20   including physical violence and rape.  *Id.* ¶¶ 67–80.

21         On December 14, 2014, Petitioner was arrested for the assault of D'aloisio with a firearm.

22   Pet. ¶ 30.  Petitioner pleaded no contest and was convicted under California Penal Code §

23   245(a)(2) for assault with a firearm.  On September 25, 2015, Petitioner received a sentence of six

24   years, which included a three-year enhancement under California Penal Code § 12022.7(e), for

25

26   [2] Respondents Matthew T. Albence, William P. Barr, Erik Bonnar, and Chad F. Wolf filed the
     relevant opposition.  Opp'n.  Respondent Wendell Anderson then joined the opposition.  ECF No.
27   15.

28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

*United States District Court*
*Northern District of California*

1    infliction of great bodily injury under circumstances involving domestic violence. *Id.*

2        Petitioner was released from prison on parole on November 27, 2018, and Petitioner was

3    promptly taken into ICE custody on that same day. *Id.* ¶ 32.  On December 4, 2018, the

4    Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner via

5    notice to appear.  ECF No. 4-3, Ex. N ("IJ Decision").  The notice to appear charged Petitioner

6    with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), which deems "[a]ny alien who is convicted

7    of an aggravated felony at any time after admission" to be removable.  *Id.*; 8 U.S.C. §

8    1227(a)(2)(A)(iii).  In response, Petitioner argued, *inter alia*, that Petitioner was entitled to Special

9    Rule Cancellation of Removal for Battered Spouses, 8 U.S.C. § 1229b(b)(2), and that Petitioner

10   was eligible for protection under the Convention Against Torture.  IJ Decision at 7.  On April 19,

11   2019, the Immigration Judge rejected Petitioner's arguments and ordered that Petitioner "be

12   removed from the United States to Ethiopia on the charge contained in the Notice to Appear." *Id.*

13   On October 3, 2019, the Board of Immigration Appeals ("BIA") upheld the Immigration Judge's

14   decision and dismissed Petitioner's appeal.  ECF No. 4-3, Ex. O.

15       On October 31, 2019, Petitioner then filed a petition for review in the Ninth Circuit. *Birru*

16   *v. Barr*, No. 19-72758, Dkt. 1 (9th Cir. 2019).  On November 8, 2019, Petitioner also filed a

17   motion for stay of removal.  *Id.* at Dkt. 6.  On February 28, 2020, the Ninth Circuit granted

18   Petitioner's motion for stay of removal pending the Ninth Circuit's decision on the petition for

19   review.  *Id.* at Dkt. 10.  That appeal remains pending.

20       On November 25, 2019, while Petitioner's appeal was pending, Petitioner filed a motion

21   for a bond hearing under 8 U.S.C. § 1226(a) with the Immigration Judge.  ECF No. 4-3, Ex. J.  On

22   December 10, 2019, the Immigration Judge denied Petitioner's motion because "[t]he court

23   agree[d] with the reasons stated in the opposition to the motion."  *Id.*, Ex. K.  On January 7, 2020,

24   Petitioner then filed an appeal of the Immigration Judge's denial of the bond hearing with the

25   Board of Immigration Appeals.  *Id.*  That appeal also remains pending.

26       On February 20, 2020, Petitioner then filed a petition for writ of habeas corpus in federal

27

28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

United States District Court
Northern District of California

1    court.  ECF No. 1.  Specifically, Petitioner argued that both 8 U.S.C. § 1226(a) and the Due

2    Process Clause of the Fifth Amendment entitled her to a bond hearing.  *Id.* ¶¶ 44, 45.  Petitioner

3    requested either immediate release or a bond hearing.  *Id.* ¶ 51.  On March 21, 2020, Petitioner

4    filed an amended petition for writ of habeas corpus.  *See* Pet.  Petitioner's amended petition for

5    writ of habeas corpus asserted the same two grounds for relief, and added a new substantive due

6    process claim based on Petitioner's conditions of confinement.  On March 24, 2020, Petitioner

7    also filed an ex parte motion for a temporary restraining order ("TRO") seeking immediate

8    release.  *See* ECF No. 5 ("TRO Mot.").  On March 25, 2020, the Court required Respondents to

9    file a response to the motion for a TRO.  ECF No. 11.  On April 1, 2020, Respondents filed an

10   opposition to Petitioner's request for a TRO.  ECF No. 14 ("Opp'n").  On April 8, 2020, Petitioner

11   filed a Reply.  ECF No. 16 ("Reply").

12         Petitioner currently remains in ICE detention and has not received a bond hearing.

13   **II.    DISCUSSION**

14         As discussed, in the instant habeas petition, Petitioner asserts three different claims for

15   relief.  First, Petitioner contends that Petitioner is entitled to a bond hearing pursuant to 8 U.S.C. §

16   1226(a).  Pet. ¶ 48.  Second, Petitioner contends that Petitioner is entitled to a bond hearing

17   because Petitioner has been subject to unconstitutionally prolonged detention under the Fifth

18   Amendment.  *Id.* ¶ 48.  Third, and finally, Petitioner, who is 36 years old, states that she suffers

19   from post-traumatic stress disorder ("PTSD"), that people with PTSD "often have weakened

20   immune function," that her PTSD thus renders her vulnerable to COVID-19, and that thus

21   Petitioner's conditions of confinement violate the Fifth Amendment.  *Id.* ¶ 61.

22         Respondents argue that Petitioner's claims for relief fail.[3]  With respect to Petitioner's first

23   two claims, Respondent contends that Petitioner has failed to exhaust administrative remedies.

24

25   _____

26   [3] While Respondents style their opposition as an opposition to Petitioner's motion for a TRO,
     Respondents devote almost all of their brief to arguing that Petitioner is in fact "lawfully
27   detained."  Opp'n at 7–23.  Accordingly, the Court construes Respondent's filing as an opposition
     to the petition itself.

                                                4
28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

1    Opp'n at 13–15.  Respondent also argues that even if Petitioner did exhaust administrative

2    remedies, Petitioner would still not be entitled to a bond hearing under either 8 U.S.C. § 1226(a)

3    or the Fifth Amendment in light of the operative case law.  *Id.* at 15–23.  Finally, Respondent

4    argues that Petitioner lacks standing to bring the Fifth Amendment conditions of confinement

5    claim, and that Petitioner's conditions of confinement do not violate the Fifth Amendment in any

6    event.  *Id.* at 7–15.

7        The Court concludes that Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a).

8    Accordingly, the Court need not reach Petitioner's second and third claims for relief.  The Court

9    begins by addressing Respondents' argument that Petitioner has failed to exhaust administrative

10   remedies with respect to this claim.  The Court then determines whether 8 U.S.C. § 1226(a)

11   necessitates that Petitioner receive a bond hearing.

12       **A. Administrative Exhaustion**

13       Respondents claim that Petitioner's first and second claims for relief necessarily fail

14   because "Petitioner did not exhaust her administrative remedies with respect to these claims."

15   Opp'n at 13.  Specifically, Respondents point to the fact that Petitioner has appealed the

16   Immigration Judge's denial of a bond hearing to the BIA, and this appeal is currently pending.  *Id.*

17   at 14.  Petitioner argues that the exhaustion requirement is prudential in nature and that it should

18   be waived in the instant case because Petitioner would suffer irreparable harm if Petitioner were

19   forced to exhaust administrative remedies.  Pet. ¶¶ 10–13.  The Court agrees with Petitioner.

20       Petitions for habeas corpus may be subject to a prudential administrative exhaustion

21   requirement, which is non-jurisdictional in nature.  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th

22   Cir. 2017).  Prudential exhaustion may be required when:

23       (1) agency expertise makes agency consideration necessary to generate a proper record
         and reach a proper decision;
24       (2) relaxation of the requirement would encourage the deliberate bypass of the
         administrative scheme; and
25       (3) administrative review is likely to allow the agency to correct its own mistakes and to
26       preclude the need for judicial review.

27
                                    5
28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

1    *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).  The Court "may require"

2    prudential exhaustion if the three *Puga* factors weigh in favor of the application of such a

3    requirement.  *See Hernandez*, 872 F.3d at 988 (outlining requirements).  However, a court may

4    also waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of

5    administrative remedies would be a futile gesture, irreparable injury will result, or the

6    administrative proceedings would be void."  *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir.

7    2004).

8            Here, prudential exhaustion is not required because the three *Puga* factors do not weigh in

9    favor of a prudential exhaustion requirement.  With respect to the first factor, Petitioner's

10   arguments do not require any administrative record from the BIA.  Instead, Petitioner's claims

11   raise purely legal questions: namely, whether Petitioner is entitled to a bond hearing under either 8

12   U.S.C. § 1226(a) or the Fifth Amendment, and whether Petitioner's conditions of confinement are

13   unconstitutional.  *See Hernandez*, 872 F.3d at 989 ("[A]n administrative appellate record is not

14   necessary to resolve the purely legal questions presented by Plaintiffs' challenge to the

15   government's policy of refusing to require ICE and IJs to consider financial circumstances and

16   alternative conditions of release in bond determinations."); *see also Jimenez v. Wolf*, No. 19-CV-

17   07996-NC, 2020 WL 1082648, at *2 (N.D. Cal. Mar. 6, 2020) (determining that prudential

18   administrative exhaustion does not bar habeas petition in part because "[a]ll that remains is [a]

19   legal question").

20           With respect to the second factor, "waiver of the prudential exhaustion requirement will

21   not 'encourage the deliberate bypass of the administrative scheme' in future cases, because, once

22   the questions presented here are decided, they 'should cease to arise.'"  *Hernandez*, 872 F.3d at

23   989.  Indeed, the Court joins a growing consensus of federal courts on the question presented here,

24   which will likely obviate the need for similar petitions in the future.  *See Avilez v. Barr*, No. 19-

25   CV-08296-CRB, 2020 WL 1704456, at *3 (N.D. Cal. Apr. 8, 2020) (examining interplay of 8

26   U.S.C. § 1226(a) and 8 U.S.C. § 1226(c)).

27

28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

United States District Court
Northern District of California

1    Finally, with respect to the third factor, there is no evidence that administrative review is

2    "likely to allow" the agency's correction of its mistake in the instant case.  On the contrary,

3    Respondents appear to have recently denied a bond hearing in the same circumstances presented

4    here.  In that case, another court in the Northern District of California similarly intervened to grant

5    a petition for writ of habeas corpus under 28 U.S.C. § 2241.  *See Avilez*, 2020 WL 1704456, at \*3

6    (granting petition for habeas corpus because "[petitioner's] detention is authorized under §

7    1226(a), which requires a bond hearing").

8    Further, even if the *Puga* factors did weigh in favor of prudential exhaustion here, the

9    Court would still waive the requirement.  This is so because in light of Petitioner's lengthy

10   detention, the Court concludes that the application of the prudential exhaustion requirement would

11   result in irreparable injury to the Petitioner in the instant case.  *See Laing*, 370 F.3d at 1000

12   (outlining exceptions to prudential exhaustion).

13   Petitioner has been detained in ICE custody since November 2018.  Pet. ¶ 32.  Petitioner's

14   petition for review has been pending before the Ninth Circuit since October 2019.  *Id.* ¶ 49.  Yet

15   Petitioner has not received a bond hearing over this entire span.  Although Petitioner has an appeal

16   pending before the BIA as to the Immigration Judge's denial of a bond hearing, the BIA has not

17   yet issued a briefing schedule on that appeal.  *Id.* ¶ 11.  There is therefore no indication of when

18   the BIA will ultimately make a decision on that issue.  For their part, Respondents merely indicate

19   that "while there is no deadline by which the BIA must decide the appeal, appeals from detained

20   individuals are given priority."  Opp'n at 14.  In light of the length of Petitioner's detention and

21   the uncertainty with respect to any future BIA resolution of the bond hearing issue, waiver of

22   administrative exhaustion would be appropriate even if the three *Puga* factors did weigh in favor

23   of prudential exhaustion.  *See, e.g.*, *Jimenez*, 2020 WL 1082648, at \*3 (waiving administrative

24   exhaustion because petitioner "has been detained for almost one and a half years" and petitioner

25   therefore "continues to suffer harm from his continued detention that cannot be repaired"); *Cortez*

26   *v. Sessions*, 318 F.Supp.3d 1134, 1139 (N.D. Cal. 2018) ("The court finds that [petitioner] suffers

27

28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

United States District Court
Northern District of California

United States District Court
Northern District of California

1   potentially irreparable harm every day that he remains in custody without a hearing, which could

2   ultimately result in his release from detention." (internal quotation marks omitted)).

3          In light of the foregoing, the Court concludes that Petitioner's first and second claims for

4   relief are not barred by the prudential doctrine of administrative exhaustion.  The Court therefore

5   proceeds to consider Petitioner's first claim for relief.

6   **B.   Petitioner Is Entitled to a Bond Hearing Under 8 U.S.C. § 1226(a)**

7          In order to assess Petitioner's first claim for relief, the Court first provides a brief

8   background of the applicable statutory provisions that govern detention in the instant case.  The

9   Court then assesses Petitioner's argument that Petitioner is entitled to a bond hearing under 8

10  U.S.C. § 1226(a).

11         **1.   Statutory Background**

12         Several different provisions of the Immigration and Nationality Act confer the government

13  the authority to detain noncitizens during immigration proceedings.  *See* 8 U.S.C. §§ 1225(b),

14  1226(a), 1226(c), 1231(a).  The applicable "statutes apply at different stages of an alien's

15  detention." *Diouf v. Mukasey*, 542 F.3d 1222, 1228 (9th Cir. 2008).  Moreover, "[w]here an alien

16  falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as

17  well as the kind of review process available to him if he wishes to contest the necessity of his

18  detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

19         In the instant case, there is no dispute that Petitioner was initially detained pursuant to 8

20  U.S.C. § 1226(c).  *See* Pet. ¶ 19 (noting that Petitioner's "initial detention was authorized pursuant

21  of 8 U.S.C. §1226(c)"); Opp'n at 15 (arguing that "Petitioner's felony conviction subjects her to

22  mandatory detention under Section 1226(c)").  Pursuant to 8 U.S.C. § 1226(c), "[t]he Attorney

23  General *shall take into custody* any alien who . . . is deportable by reason of having committed any

24  offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."  8 U.S.C. §

25  1226(c)(1) (emphasis added).  As noted, Petitioner was convicted of assault with a firearm under

26  California Penal Code § 245(a)(2), which constitutes an "aggravated felony" under 8 U.S.C. §

27

28  Case No. 20-CV-01285-LHK
    AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
    DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

1227(a)(2)(A)(iii).  *See, e.g.*, IJ Decision at 2 ("The respondent did not meaningfully dispute that her conviction for assault with a firearm is an aggravated felony.").

Under 8 U.S.C. § 1226(c), the government may release a noncitizen detained under the provision only for witness protection purposes.  *See* 8 U.S.C. § 1226(c)(2) (explaining that release from custody is authorized only when "release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation").  In light of the mandatory language of the detention provision and the limitation on release, noncitizens who are detained pursuant to 8 U.S.C. § 1226(c) generally do not have "a chance to apply for release on bond or parole." *Nielsen v. Preap*, 139 S. Ct. 954, 960 (2019); *see also Avilez*, 2020 WL 1704456, at *2 ("But under § 1226(c) the Attorney General must detain a noncitizen who has committed certain crimes until the conclusion of removal proceedings." (internal quotation marks omitted)).

The second detention provision relevant to the instant case is 8 U.S.C. § 1226(a).  Unlike 8 U.S.C. § 1226(c), the government has discretion to determine whether to detain a noncitizen under 8 U.S.C. § 1226(a).  Indeed, 8 U.S.C. § 1226(a) dictates that "an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States."   8 U.S.C. § 1226(a) (emphasis added).  However, in the event that the government does elect to detain a noncitizen pursuant to 8 U.S.C. § 1226(a), 8 U.S.C. § 1226(a) requires a bond hearing at the outset of detention.  *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) ("[W]e hold that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a [bond] hearing."); *accord Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").  Hence, to the extent that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), the parties both appear to agree that Petitioner is entitled to a bond hearing.  Pet. ¶ 46 (noting that "8 U.S.C § 1226(a), [] allows for bond hearings"); Opp'n at 15 (arguing that Petitioner

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   is not entitled to "a Section 1226(a) bond hearing" because "Petitioner remains detained under

2   Section 1226(c)").

3           The question that the Court must resolve for the purposes of the instant petition is whether

4   Petitioner is detained pursuant to 8 U.S.C. § 1226(a) or 8 U.S.C. § 1226(c).  If Petitioner is

5   detained pursuant to 8 U.S.C. § 1226(a), then as discussed *infra*, Petitioner is statutorily entitled to

6   a bond hearing.  If Petitioner is detained pursuant to 8 U.S.C. § 1226(c), then the Court must reach

7   Petitioner's constitutional arguments to determine whether a bond hearing is nonetheless

8   necessary.  The Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and that

9   a bond hearing is therefore required.

10          **2.  Petitioner Is Detained Under 8 U.S.C. § 1226(a)**

11          The parties dispute the statutory authority for Petitioner's current detention.  According to

12  Petitioner, because the BIA dismissed Petitioner's appeal of the removal order, and because

13  Petitioner's petition for review is pending before the Ninth Circuit, detention authority has shifted

14  to 8 U.S.C. § 1226(a).  Pet. ¶ 48.  Respondents argue that "Petitioner remains detained under

15  Section 1226(c) and is not entitled to a Section 1226(a) bond hearing."  Opp'n at 15.  Petitioner is

16  correct.  Petitioner is currently detained pursuant to 8 U.S.C. § 1226(a) and is thus entitled to a

17  bond hearing.

18          In *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), the Ninth

19  Circuit examined a squarely analogous situation.  Indeed, in *Casas-Castrillon*, the Ninth Circuit

20  explained that 8 U.S.C. § 1226(c) only authorizes detention of a noncitizen until the BIA issues a

21  final removal order.  535 F.3d at 948 (explaining that "[o]nce [the petitioner's] proceedings before

22  the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended").

23  Once the BIA issues a final removal order and the petitioner seeks judicial review of the removal,

24  then the detention authority "shift[s] instead to § 1226(a)."  *Id.*  Moreover, the Ninth Circuit held

25  that the petitioner is statutorily entitled to a bond hearing once the detention authority shifts.  *Id.* at

26  951 ("Because the prolonged detention of an alien without an individualized determination of his

27
                                              10
28  Case No. 20-CV-01285-LHK
    AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
    DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

1   dangerousness or flight risk would be 'constitutionally doubtful,' . . . § 1226(a) must be construed

2   as *requiring* the Attorney General to provide the alien with such a [bond] hearing.").

3          *Casas-Castrillon* dictates that the authority to detain Petitioner has shifted from 8 U.S.C. §

4   1226(c) to 8 U.S.C. § 1226(a) because Petitioner has been subject to a final removal order and

5   because Petitioner currently seeks judicial review of that removal.  *Id.* (explaining that when a

6   noncitizen is first detained under 8 U.S.C. § 1226(c), after the "administrative proceedings are

7   complete" the noncitizen is "detained under the Attorney General's broader grant of discretionary

8   authority under § 1226(a)").  *Casas-Castrillon* also dictates that under 8 U.S.C. § 1226(a),

9   Petitioner is automatically entitled to a bond hearing.  *Id.* ("[W]e hold that § 1226(a) must be

10   construed as requiring the Attorney General to provide the alien with such a hearing.").

11          Respondents do not contest any of the foregoing.  Instead, Respondents claim that *Casas-*

12   *Castrillon* is no longer good law in light of the United States Supreme Court's decision in

13   *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  The Court disagrees.

14          As an initial matter, and as Respondents recognize, *Casas-Castrillon* is inapplicable only

15   to the extent that it is "clearly irreconcilable" with the United States Supreme Court's intervening

16   decision in *Jennings*.  *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)

17   (explaining that Ninth Circuit authority has only been "effectively overruled" when the authority

18   is "clearly irreconcilable" with intervening higher authority).  The Ninth Circuit has repeatedly

19   stressed that "[t]he 'clearly irreconcilable' requirement is 'a high standard.'"  *United States v.*

20   *Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) (quoting *Rodriguez v. AT & T Mobility Servs.*

21   *LLC*, 728 F.3d 975, 979 (9th Cir. 2013)).  Thus, if the Court can apply Ninth Circuit precedent

22   "consistently with that of the higher authority, we must do so."  *Fed. Trade Comm'n v. Consumer*

23   *Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

24          In *Jennings*, the United States Supreme Court overruled various aspects of the Ninth

25   Circuit's interpretation of the Immigration and Nationality Act's detention provisions.  As relevant

26   for the purposes of the instant case, the United States Supreme Court examined the Ninth Circuit's

27

28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

11

United States District Court
Northern District of California

1    interpretation of 8 U.S.C. § 1226(c) and 8 U.S.C. § 1226(a).  *Jennings*, 138 S. Ct. at 846–48.  As

2    to 8 U.S.C. § 1226(c), the United States Supreme Court held that so long as 8 U.S.C. § 1226(c)

3    applies, a noncitizen may be released "'*only if* the Attorney General decides' both that doing so is

4    necessary for witness-protection purposes and that the alien will not pose a danger or flight risk."

5    *Id.* at 846 (quoting 8 U.S.C. § 1226(c)(2)).  The United States Supreme Court also held that 8

6    U.S.C. § 1226(c) does not "include an implicit 6–month time limit on the length of mandatory

7    detention."  *Id.*  Similarly, as to 8 U.S.C. § 1226(a), the United States Supreme Court similarly

8    rejected the proposition that the statute itself requires "periodic bond hearings every six months in

9    which the Attorney General must prove by clear and convincing evidence that the alien's

10   continued detention is necessary."  *Id.* at 847.

11          The Ninth Circuit has already explained that *Jennings* left *Casas-Castrillon*'s conclusion

12   that bond hearings are statutorily mandated by 8 U.S.C. § 1226(a) untouched.  *See Aleman*

13   *Gonzalez v. Barr*, -- F.3d --, 2020 WL 1684034, at *20 (9th Cir. Apr. 7, 2020) (explaining that

14   "[b]y its terms, *Jennings* invalidates that aspect of our case law construing § 1226(a) [*i.e.*, the six-

15   month bond hearing requirement subject to clear and convincing evidence], but does not go

16   further."); *see also id.* at *17 ("The Court's rejection of our court's imposition of a six-month

17   bond hearing requirement for aliens detained pursuant to § 1226(a) beyond the regulations'

18   provision of a single bond hearing at the outset of detention is not the same as rejecting a

19   construction of § 1226(a) to authorize or require bond hearings at all.").

20          Hence, the sole question before the Court is the impact of *Jennings* on *Casas-Castrillon*'s

21   holding that detention authority shifts from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when a

22   petitioner is subject to a final removal order and seeks judicial review of that removal order.

23   Respondents point to language in *Jennings* in which the United States Supreme Court held that

24   "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must*

25   continue 'pending a decision on whether the alien is to be removed from the United States.'"  138

26   S. Ct. at 846 (citing 8 U.S.C. § 1226(a)).  According to Respondents, "this categorical language" is

27

28

1    impossible to reconcile with *Casas-Castrillon*.  Opp'n at 16–17.

2         The Court disagrees.  First of all, the United States Supreme Court repeatedly emphasized

3    that 28 U.S.C. § 1226(c) mandates detention only as to "aliens *within its scope*."  138 S. Ct. at 846

4    (emphasis added); *see also id.* at 847 ("We hold that § 1226(c) mandates detention of any alien

5    falling *within its scope* and that detention may end prior to the conclusion of removal proceedings

6    'only if' the alien is released for witness-protection purposes." (emphasis added)).  The *Casas-*

7    *Castrillon* court held that petitioners who are subject to a final removal order and then seek

8    judicial review of that removal order *are no longer within the scope of 28 U.S.C. § 1226(c).  See*

9    *Casas-Castrillon*, 535 F.3d at 951 ("[Section] 1226(c) does not authorize prolonged mandatory

10   detention after an alien's administrative proceedings are complete.  Rather, these aliens are

11   detained under the Attorney General's broader grant of discretionary authority under § 1226(a).").

12   The United States Supreme Court said nothing about that conclusion.  Thus, *Casas-Castrillon* and

13   *Jennings* can be readily harmonized insofar as: (1) *Casas-Castrillon* narrowed the scope of

14   noncitizens who are subject to detention under 8 U.S.C. § 1226(c); and (2) *Jennings* then

15   explained the statutory consequences for the noncitizens who continue to fall within the scope of 8

16   U.S.C. § 1226(c).

17        Further, the United States Supreme Court's discussion of the interplay between 8 U.S.C. §

18   1226(c) and 8 U.S.C. § 1226(a) is ambiguous.  Indeed, in *Jennings*, the United States Supreme

19   Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its

20   scope *must* continue 'pending a decision on whether the alien is to be removed from the United

21   States.'"  138 S. Ct. at 846 (citing 8 U.S.C. § 1226(a)).  The United States Supreme Court's use of

22   the phrase "together with § 1226(a), § 1226(c)," could reasonably "mean that the two statutory

23   sections work together to ensure that a noncitizen remains in custody pending judicial review of a

24   final order of removal, because § 1226(c) applies before the order of removal becomes final, and §

25   1226(a) applies after the order of removal becomes final."  *Avilez*, 2020 WL 1704456, at *3.  In

26   *Avilez v. Barr*, 2020 WL 1704456 (N.D. Cal. Apr. 8, 2020), another district court in the Northern

27

28   Case No. 20-CV-01285-LHK
     AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
     DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

United States District Court
Northern District of California

1    District of California recently came to this very conclusion when it considered and rejected an

2    argument identical to the one Respondents make here.  *Id.*

3         Accordingly, the Court cannot conclude that *Casas-Castrillon*'s holding that detention

4    authority shifts from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when a petitioner is subject to a

5    final removal order and seeks judicial review of that removal order is "clearly irreconcilable" with

6    *Jennings*.  *See id.* at *3 ("Because there is a reasonable interpretation of *Jennings* that leaves

7    *Casas* intact, the Court remains bound by the Ninth Circuit's decision in *Casas*."); *accord Aleman*

8    *Gonzalez*, 2020 WL 1684034, at *20 ("*Casas-Castrillon* did not construe § 1226(a) in the manner

9    that the [United States Supreme] Court rejected in *Jennings*.").  Because this aspect of *Casas-*

10   *Castrillon*'s holding remains binding, Petitioner's detention is governed by 8 U.S.C. § 1226(a).

11   Moreover, under 8 U.S.C. § 1226(a), Petitioner is automatically entitled to a bond hearing.  *See*

12   *Casas-Castrillon*, 535 F.3d at 951 ("[W]e hold that § 1226(a) must be construed as requiring the

13   Attorney General to provide the alien with such a [bond] hearing.").

14   **III.    CONCLUSION**

15        For the foregoing reasons, the Court finds that Petitioner is entitled a bond hearing.

16   However, because the Court lacks sufficient basis to rule on whether Petitioner is a flight risk or a

17   danger to the community, the Court does not find that Petitioner is entitled to immediate release

18   from ICE custody.  Thus, the Court GRANTS in part and DENIES in part Petitioner's petition for

19   writ of habeas corpus under 28 U.S.C. § 2241 and DENIES as moot Petitioner's TRO motion.

20   Within 30 days of this order, Respondents must provide Petitioner with a bond hearing before an

21   Immigration Judge who has the power to grant Petitioner's release on bond if Respondents fail to

22   establish "by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the

23   community."  *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Aleman Gonzalez*,

24   2020 WL 1684034, at *16 (explaining that *Jennings* did not "undercut our constitutional due

25   process holding in *Singh*" with respect to "clear and convincing evidence" standard).

26

27

28
14

United States District Court
Northern District of California

Case No. 20-CV-01285-LHK
AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

**IT IS SO ORDERED.**

Dated: April 17, 2020

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

15

Case No. 20-CV-01285-LHK
AMENDED ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER